MAX DOCTOR *et al.*, Appellants, *against* PATRICK GILMARTIN, Respondent.

(Decided April 4th, 1887.)

A failed in business, whereupon B established himself in the business and employed A as agent and manager, giving him power of attorney to buy and sell and draw checks in his name, etc. A bought goods of plaintiffs for several years, giving checks in payment on account in the name of " B by A, attorney." Plaintiffs, discovering that B had continued in such business only a few months, brought action against A for obtaining goods on false representations. One of the plaintiffs testified that A told him that B took charge of the inside of the shop while A did the buying; but it did not appear at what time this statement was made; nor was there evidence that defendant did not intend to pay the balance of account. *Held*, that the evidence was not sufficient to support the action.

APPEAL from an order of the General Term of the City Court of New York affirming a judgment of that court entered on the dismissal of a complaint at the trial.

The action was brought to recover the price of meat sold to defendant upon his alleged false and fraudulent representations that in the purchase thereof he was acting as agent for one Gillen.

*Charles A. Hess*, for appellants.

*T. C. E. Ecclesine*, for respondent.

PER CURIAM. — [Present, VAN HOESEN and ALLEN, JJ.] — Where third persons deal in good faith with one who was duly authorized as an agent, a revocation of the agent's authority will not affect the dealings of such third persons with the agent, until notice of the revocation is given to them (1 Wait's Act. & Def. p. 290; Story on Agency § 470). There is no doubt that Gilmartin had at one time a valid power of attorney from Gillen, and that if there ever was a revocation of that power the plaintiffs did not have notice of it at the time the goods were delivered to Gilmartin. It is difficult to see, therefore, why the plaintiffs have not a right to recover the value of the goods from Gillen; and if such a right exists, they are not in a position to claim damages from Gilmartin on the ground that he fraudulently represented himself to be Gillen's agent.

But, aside from that, we think that the evidence fails to support the charge that Gilmartin obtained the goods by false representations, or that his intention was to defraud the plaintiffs. In 1880 or 1881 Gilmartin failed, and Gillen appears to have established himself in the business of a butcher, and to have employed Gilmartin as his agent and manager. He gave to Gilmartin a power of attorney to buy, sell, draw checks, and do any act necessary to be done in the conduct of the business. Gilmartin thereafter bought some goods of the plaintiffs for cash, and for several years bought goods on credit, for a large part of which he paid by cheques drawn in the name of " Gillen by Gilmartin, attorney." At the end of several years Gilmartin ran up a bill, the whole of which he did not pay, and the plain-

tiffs, discovering that Gillen had continued in the business only three or four months, now seek to hold Gilmartin liable on the ground that he obtained the goods for which he failed to pay by fraudulently representing himself as Gillen's agent during the entire course of his dealings with them.   One of the plaintiffs, Mr. Hatch, swore that Gilmartin told him that Gillen took charge of the inside of the shop, and that he (Gilmartin) did the buying.   This was not a representation that Gillen was the purchaser of the goods, or the owner of the shop.   At most, it was a representation that Gillen assisted in the business.   But even if it were to be regarded as a statement that Gillen was the responsible principal, it would have been true at one time ; and it was for the plaintiffs to prove that at the time it was made it was not true.   Hatch cannot say at what time the statement was made, though he thinks that it was between 1883 and 1884.   Where a representation is shown to have been true, if made in 1881, and untrue if made subsequently, the evidence that it was made after it had ceased to be true ought to be clear and positive.   It certainly is not so, in this case.

Again : the intent to defraud was not proved.   For several years Gilmartin made partial payments on account, and, in order to convict him of having bought the goods with fraudulent intent, there must be some evidence to warrant a jury in finding that he never intended to pay the balance. The case contains no such evidence.   The judgment should be affirmed.

Judgment affirmed.